IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06 CV 125-H

| | |
|---|---|
| LUCY BIGHAM PIGG,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PROGRESSIVE CASUALTY INSURANCE<br>COMPANY and CANAL INSURANCE<br>COMPANY,<br><br>　　　　Defendants. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court upon the Plaintiff's "Motion to Remand Action to State Court" (document #7) filed April 17, 2006, and the "Plaintiff's Brief in Support . . ." (document #9) filed May 11, 2006.[1] Defendant Canal Insurance Company filed its ". . . Brief in Opposition to Plaintiff's Motion to Remand" (document #10) on May 24, 2006, and Defendant Progressive Casualty Insurance Company filed its ". . . Memorandum of Law in Opposition to Plaintiff's Motion to Remand" (document #16) on June 6, 2006.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>deny</u> the Plaintiff's Motion to Remand, as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff filed this action on December 22, 2005, in the General Court of Justice, Superior Court Division of Union County, North Carolina, seeking a Declaratory Judgment that

---

[1] Counsel for the Plaintiff contacted the undersigned's chambers and was given an informal twenty (20) day extension in which to file her supporting memorandum. In addition, counsel for each Defendant was contacted and informed that the time to respond to the Plaintiff's Motion to Remand would not begin to run until each was served with her supporting memorandum due to the Court's grant of an informal extension.

separate commercial automobile liability insurance policies issued by the Defendants provided coverage for injuries sustained by the Plaintiff in an April 26, 2001 collision.

Jeffrey Smith caused a multiple vehicle collision while operating a tractor-trailer on April 26, 2001, which resulted in personal injury and property damage to the Plaintiff. This collision caused significant bodily injury, including a number of broken bones. To date the Plaintiff has accumulated over $300,000 in accident-related medical bills, may never fully recover, and anticipates almost $45,000 in home renovations to make her home handicap accessible.

At the time of the accident, Mr. Smith carried a liability insurance policy with National Casualty Insurance Company ("National"), which has offered to settle its claims with the Plaintiff for $687,554.53. The Plaintiff has made the strategic decision not to accept this offer until she can determine what other coverage is available under two other insurance policies. Specifically, at the time of the collision, Mr. Smith was hauling a trailer owned by Mickey Plyler Trucking, Inc., which carried a fleet insurance policy issued by Canal Insurance Company ("Canal"), with a liability limit of $1,000,000. In addition, Mr. Smith did not have his own Interstate Commerce Commission ("ICC") number, but had entered a verbal agreement with Teresa Clyburn of C.J. Trucking Company to operate his tractor under Ms. Clyburn's ICC number. At the time of the collision, Ms. Clyburn carried an insurance policy issued by Progressive Casualty Insurance Company ("Progressive") with a liability limit of $750,000. In her Complaint, the Plaintiff alleged that the Progressive and Canal policies apply to the April 26, 2001 collision and are "liable to Plaintiff up to the full liability limits of said polic[ies]." Both Canal and Progressive deny that their policies are applicable to the Plaintiff's injuries.

Relevant to the subject Motion to Remand, the Plaintiff is a citizen of North Carolina,

Progressive is a corporation organized under Ohio law with its principal place of business in Ohio, and Canal is a corporation organized under South Carolina law with its principal place of business in South Carolina.

On March 17, 2006, the Defendants filed a "Notice of Removal" pursuant to 28 U.S.C. § 1332, alleging federal diversity subject matter jurisdiction. On April 17, 2006, the Plaintiff filed her Motion to Remand, essentially conceding that the parties' citizenship is diverse,[2] but arguing that "the jurisdictional amount in controversy has not been established or proved" and that even if it had, Canal waived the Defendants' right to remove this case by availing itself of the jurisdiction of the state court. The Defendants argue that the language of the Plaintiff's Complaint actually seeks the full amount of the policies, that her prior attorney made them aware of additional facts which prove the value of her claims as to each Defendant exceeds $75,000, and that their removal right was not waived by virtue of Canal filing a motion for extension of time in state court.

The Plaintiff's motion has been fully briefed and is therefore ripe for disposition.

## II. DISCUSSION

### A. Amount in Controversy

At the outset, the undersigned notes that the Plaintiff's Motion to Remand is timely. See 28 U.S.C. § 1447(c) (motion to remand must be filed within 30 days of filing of notice of removal and the court shall order remand if removal was improper).

---

[2]The citizenship of the parties is clearly diverse, that is, the Plaintiff is a citizen of North Carolina, Progressive is a citizen of Ohio, and Canal is a citizen of South Carolina. See 28 U.S.C. § 1332(c)(1) (2000) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"); Athena Automotive, Inc. v. DiGregorio, 166 F.3d 288, 290 (4th Cir. 1999) (a corporation has its principal place of business at the "nerve center" and/or "place of" its operations); and Peterson v. Cooley, 142 F.3d 181, 184 (4th Cir. 1998).

28 U.S.C. § 1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The existence of subject matter jurisdiction is a threshold issue, and absent a proper basis for subject matter jurisdiction, a removed case must be remanded to state court. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998). Accord Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999); and Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Moreover, it is well established that "[t]he subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000), citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Accord Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002) ("In general, an action filed in state court may be removed to federal court only if it might have been brought in federal court originally"). There is no dispute that the Plaintiff's claims arise entirely under state law and, therefore, that the basis for federal subject matter jurisdiction, if any, must arise under what is commonly called diversity jurisdiction.

A case falls within a federal district court's diversity jurisdiction only if diversity of citizenship among the parties is complete – that is, only if no plaintiff and defendant are citizens of the same State – and the amount in controversy exceeds $75,000. See, e.g., 28 U.S.C. § 1332 (2000); Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 388 (1998); Carden v. Arkoma Associates, 494 U.S. 185, 187 (1990); and Strawbridge v. Curtiss, 3 Cranch 267 (1806). The requirements are so absolute that "[n]o party need assert [a lack of complete diversity or the requisite

4

amount in controversy]. No party can waive the defect, or consent to jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." Schacht, 524 U.S. at 389 (internal citations omitted). Accord Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982).

The party seeking federal jurisdiction has the burden generally of proving that subject matter jurisdiction exists. See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); and Norfolk Southern Ry. Co. v. Energy Development Corp., 312 F. Supp. 2d 833, 835 (S.D. W. Va. 2004). In cases where jurisdiction is predicated on diversity of citizenship and where a complaint does not allege a specific amount of damages but instead seeks damages "in excess" of a certain dollar figure, the party asserting that jurisdiction exists must prove by the preponderance of the evidence that the amount in controversy requirement has been met. Accord Momin v. Maggiemoo's International L.L.C., 205 F. Supp. 2d 506, 509 (D. Md. 2002) (applying preponderance of evidence standard to amount in controversy); and Gynn v. Wal-mart Stores, 955 F. Supp. 44, 46 (M.D.N.C. 1996) (same).

When a claim is being made on an insurance policy, "the amount in controversy is the value of the underlying claim, not the face amount of the policy." Darbet, Inc. v. Bituminous Casualty Corp., 792 F. Supp. 487, 489 (S.D. W. Va. 1992). See also Allstate Ins. Co. v. Brown, 736 F. Supp. 705, 707 (W.D. Va. 1990) ("[w]here the insured does not seek to recover the maximum under the policy, the court cannot rely exclusively on the policy limit as the measure of the amount in controversy").[3]

---

[3]Recognizing that unpublished authority is of limited precedential value, the undersigned nonetheless notes that the Fourth Circuit has also found that the value of a plaintiff's claims should not be assumed to "automatically equate" to the policy limits of the coverage. Toler v. State Farm Mutual Automobile Ins. Co., 25 Fed. Appx. 141,

5

It is also well settled that the existence of subject matter jurisdiction and, specifically, whether more than $75,000 is in controversy is evaluated as of the time the Complaint is filed. Griffin v. Red Run Lodge, Inc., 610 F.2d 1198, 1204-05 (4th Cir. 1979), citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290-93 (1938) (holding that plaintiff could not avoid federal jurisdiction by decreasing amount in controversy in amended complaint filed post-removal). Accord Keith v. Clarke American Checks, Inc., 261 F. Supp. 2d 419, 422 (W.D.N.C. 2003) (where complaint, including claim for back pay, was filed more than two years after plaintiff's termination and his annual salary had been $41,000, the amount in controversy was met). And, finally, "[w]hen a complaint is ambiguous at to the value of the action, 'until jurisdiction becomes determinate, the court may consider any evidence of the amount in controversy.'" Talantis v. Paugh Surgical, Inc., 273 F. Supp. 2d 710, 713 (M.D.N.C. 2003) (citations omitted).

Applying these legal principles to the record in this case, because there is no issue over the diversity of the parties, the Defendants must prove by the preponderance of the evidence that more than $75,000 was in controversy at the time the Complaint was filed. The Plaintiff argues that the jurisdictional amount has not been met because she has never "stated or otherwise indicated that she seeks this amount." Further, she states that National has offered as settlement the full amount of her medical expenses and property damage, plus an amount for the "unspecified amount in pain and suffering" she seeks. However, to find that the jurisdictional amount was not present in this case would go squarely against the evidence presented, all of which was available at the time the Complaint was filed.

First, although the undersigned is not relying exclusively on the policy limit, it is notable that

---

143 (4th Cir. 2001).

6

in her Complaint the Plaintiff actually seeks a declaration that Canal and Progressive are "liable to Plaintiff up to the full liability limits of said polic[ies]." As noted above, the Canal policy has a $1,000,000 limit and the Progressive policy has a $750,000 limit. This fact alone would not satisfy the jurisdictional amount, but when considered in light of the Plaintiff's extensive injuries as described in the May 10, 2005 letter from her former attorney to Progressive, it is clear that the Plaintiff seeks more than $75,000 from each of the Defendants, and to find otherwise would be to ignore the plain facts of this case in favor of a generic statement by the Plaintiff that she simply has not yet stated the amount in controversy.

First, the Plaintiff has held off accepting a settlement offer of $687,554.53 for the purpose of finding out whether additional recovery from Canal and Progressive was possible. While it is true that her medical bills, approximately $305,352.22, are covered by the proposed National settlement, and most likely the damage to her vehicle, the pain and suffering element of the Plaintiff's claim appears to be extremely significant. Sixteen specific injuries are listed in the letter–all of which are summarized by the words of one of her doctors that she "broke nearly every bone in her body." According to the letter, the Plaintiff, 66-years-old at the time of the collision, endured months of recovery at a hospital and nursing home. Following this, she moved in with her paraplegic son because his house is handicap accessible. However, she continued with regular medical treatment. "She suffers from chronic and debilitating pain on a daily basis." Further,

> [The Plaintiff] now has great difficulty just getting dressed each day and pursuing her daily activities. She cannot be on her feet, to stand or walk, for any length of time and has to use a walker and her wheelchair extensively. When she stands or tries to walk, she is in constant danger of falling, because of weakness in both legs and balance problems related to her injuries. She has been advised by her family doctor [] that she will likely have to take blood thinners (she is presently taking Coumadin) for the rest of her life. This puts her at even greater risk than the population

7

generally, each time she suffers a fall, which happens frequently.

In addition, the Plaintiff anticipates almost $45,000 of home renovations in order to make her own home handicap accessible so that she may live there. "Prior to this wreck and her injuries, [the Plaintiff] was an independent, healthy, robust, energetic and active woman, who worked an average of 45 hours per week." Now, she has extensive scars and disfigurement, and considers her injuries permanent.

Considering these extensive and life-changing injuries, the nature of this action, the Plaintiff's own choice of words in her Complaint, the policy limits on the Canal and Progressive policies, and the existing potential resolution of claims with National, the undersigned finds that the jurisdictional amount has been satisfied. In short, the Defendants have shown by the preponderance of the evidence that the Plaintiff's potential recovery from each Defendant, if successful in establishing application of the two policies, would exceed $75,000, the statutory minimum for federal diversity jurisdiction.

B. **Waiver of Right of Removal**

Plaintiff also argues that this action should be remanded to state court because Canal waived its right to remove the action to federal court by the filing of a single motion for an extension of time. On this issue, the Fourth Circuit has held that while "a defendant may [] waive its 30-day right to removal by demonstrating a 'clear and unequivocal' intent to remain in state court, such a waiver should only be found in 'extreme circumstances.'" Grubb v. Donegal Mutual Ins. Co., 935 F.2d 57, 59 (4th Cir. 1991) (citations omitted). A motion for extension of time does not demonstrate a clear and unequivocal intent to remain in state court and certainly does not present an extreme circumstance in which waiver could be found. Accordingly, the Plaintiff's Motion to Remand will

be denied on this ground as well.

### III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The Plaintiff's "Motion to Remand Action to State Court" (document #7), is **DENIED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED**.

Signed: June 27, 2006

Carl Horn, III
United States Magistrate Judge